IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| EDWARD J. BROWN, | ) |
|                       Petitioner, | ) Civil Action No. 08 - 203J |
| v. | ) Magistrate Judge Lisa Pupo Lenihan |
| COMMONWEALTH OF PENNSYLVANIA BOARD OF PROBATION AND PAROLE, | ) |
|                       Respondent. | ) |

**MEMORANDUM OPINION AND ORDER**

Petitioner, Edward J. Brown, a federal prisoner presently incarcerated at the Federal Correctional Institution at Loretto, Pennsylvania, has petitioned for a writ of habeas corpus pursuant to 28 U.S.C. § 2241. For the reasons that follow, the Petition will be denied.

### A. Relevant Factual and Procedural History

On March 25, 2003, Petitioner, Edward J. Brown was sentenced by the Court of Common Pleas of Mifflin County, Pennsylvania to a term of incarceration of from one and one-half to three (1½ to 3) years in a state correctional institution for the Manufacture/Sale/Deliver or Possession w/Intent to Deliver a Controlled Substance, Possession of a Controlled Substance, and Possession of Paraphernalia. After the expiration of his minium sentence, on September 21, 2004, the Pennsylvania Board of Probation and Parole (the Board) released Petitioner from custody on parole. At the time of his release, Petitioner had 541 days (1 year, 5 months, 23 days) left to serve on his 2003 state sentence, which resulted in a maximum sentence date of March 16, 2006.

On December 9, 2004, Petitioner was arrested by the Pennsylvania State Police on new criminal charges, which were filed in the Huntingdon County Court of Common Pleas at Docket Nos. 640 C.A. 2004, 641 C.A. 2004, 642 C.A. 2004, 643 C.A. 2004, 645 C.A. 2004, and 646 C.A.

2004.  On January 28, 2005, Petitioner was arrested on an additional criminal charge filed in the Huntingdon County Court of Common Pleas at Docket No. 48 C.A. 2005.

On February 2, 2005, Petitioner was indicted on federal criminal charges in the United States District Court for the Middle District of Pennsylvania at Criminal Docket No. 1:05-cr-00051.  The February 2, 2005 indictment was based on the same conduct as the December 9, 2004 and January 28, 2005 arrests by the Pennsylvania State Police.  On March 21, 2005, the charges at Huntingdon County Court of Common Pleas Docket Nos. 640 C.A. 2004, 641 C.A. 2004, 642 C.A. 2004, 643 C.A. 2004, 645 C.A. 2004, 646 C.A. 2004, 48 C.A. 2005 were nolle prossed. On July 13, 2005, Petitioner pleaded guilty to two federal counts of Aiding & Abetting Interstate Travel to Facilitate the Distribution & Possession with the Intent to Distribute Crack Cocaine. October 17, 2005, the United States District Court for the Middle District of Pennsylvania sentenced Petitioner to a 120 month term to be served in a federal correctional institution.

On May 11, 2006, the Board issued a warrant to arrest and detain Petitioner for parole violations (doc. no. 1-3, p. 1).  On November 2, 2007, Petitioner filed a petition for review in the original jurisdiction of Pennsylvania's Commonwealth Court at Docket No. 533 M.D. 2007 seeking relief from the Board's detainer.  On January 31, 2008, the Commonwealth Court dismissed his petition for review on the grounds that the Board is permitted to lodge a detainer against him to ensure his return to state custody at the expiration of his federal sentence (doc. no. 11-1, p. 11).

On July 17, 2008, Petitioner filed a Petition for Writ of Habeas Corpus in this Court alleging that his due process rights are being violated by a delay in his state parole revocation proceedings. Specifically, Petitioner asserts that the Board should have conducted a parole revocation hearing within 120 days of receipt of official verification of his new federal convictions; therefore, the detainer lodged against him is an unconstitutional restraint of his liberty.

**B. Availability of Federal Habeas Corpus Relief**

A prisoner may be granted federal habeas corpus relief only if he is in custody in violation of the Constitution or federal law. 28 U.S.C. § 2241(c)(3). Petitioner's habeas petition does not state a cognizable basis for federal habeas corpus relief because it fails to assert any constitutional violation associated with the Board's actions in issuing a parole violation detainer against Petitioner.

Petitioner asserts that the Board's action violated his procedural due process rights. "Due process" is guaranteed through the Fourteenth Amendment of the United States Constitution. The Due Process Clause was promulgated to secure the individual from the arbitrary exercise of the powers of government. The "procedural" aspect of the Due Process Clause requires the government to follow appropriate procedures to promote fairness in governmental decisions; the substantive aspect of the Clause bars certain government actions regardless of the fairness of the procedures used to implement them so as to prevent governmental power from being used for purposes of oppression. Daniels v. Williams, 474 U.S. 327, 329-33 (1986). (citations omitted.)

To establish a procedural due process violation, a person must demonstrate that he has been deprived of a constitutionally-protected property or liberty interest. Daniels v. Williams, 474 U.S. at 339. A constitutionally-protected interest may arise either from the Due Process Clause itself, or from a statute, rule, or regulation. Hewitt v. Helms, 459 U.S. 460, 466 (1983). A liberty interest "inherent" in the Constitution arises when a prisoner has acquired a substantial, although conditional, freedom such that the loss of liberty entailed by its revocation is a serious deprivation requiring that the prisoner be accorded due process. Gagnon v. Scarpelli, 411 U.S. 778, 781 (1973). Liberty interests that fall within this category include the revocation of parole, Morrissey v. Brewer, 408 U.S. 471 (1972), and the revocation of probation, Gagnon, 411 U.S. at 778. As the Supreme Court made

clear, however, the loss of liberty as a parole violator does not occur until the parolee is taken into custody under the warrant. Moody v. Daggett. 429 U.S. 78, 87 (1976).

> Petitioner's present confinement and consequent liberty loss derive not in any sense from the outstanding parole violator warrant, but from his two 1971 homicide convictions. Issuance of the warrant and notice of that fact to the institution of confinement did no more than express the Board's intent to defer consideration of parole revocation to a later time. Though the gravity of petitioner's subsequent crimes places him under a cloud, issuance of the warrant was not a determination that petitioner's parole under his 1962 rape conviction will be revoked; the time at which the Commission must make that decision has not yet arrived. With only a prospect of future incarceration which is far from certain, we cannot say that the parole violator warrant has any present or inevitable effect upon the liberty interests which Morrissey sought to protect. Indeed, in holding that "(t)he revocation hearing must be tendered within a reasonable time after the parolee is taken into custody," we established execution of the warrant and custody under that warrant as the operative event triggering any loss of liberty attendant upon parole revocation.

Moody v. Daggett, 429 U.S. at 86-87 (internal citations omitted).

In the instant action, Petitioner was released from Pennsylvania custody on parole on September 21, 2004. At that time, he had 1 year, 5 months, 23 days left to serve on his 1½ to 3 year sentence, which expired on March 16, 2006. Petitioner was arrested on new criminal charges on December 9, 2004, well before the expiration of his 2003 state sentence. On July 13, 2005, Petitioner pleaded guilty to new federal criminal charges. The Pennsylvania Parole Act, like statutes enacted in many other states and by the federal government, does not give any sentencing credit for time spent on parole for the remainder of a parolee's sentence who has been convicted of other crimes while on parole. Thus, for parolees like Petitioner, who chose to commit additional criminal offenses during the period they would have been incarcerated but for the fact that they were released on parole, the service of their sentence "freezes" on the date of their release on parole and does not begin running again until they are returned to custody in Pennsylvania to serve the remainder of the

4

original sentence. *See* 61 Pa. Cons. Stat. § 331.21a(a). Because he is a convicted parole violator, the service of petitioner's Pennsylvania sentence is frozen during the period he is serving his federal sentence. When he is returned to Pennsylvania custody following the service of his federal sentence, he will have 1 year, 5 months, 23 days "backtime"[1] left to serve on his three year state sentence.

The relevant Pennsylvania law applicable to parolees convicted of new criminal offenses while serving parole is as follows.

> § 71.4. Conviction for a new criminal offense.
>
> The following procedures shall be followed before a parolee is recommitted as a convicted violator:
>
>> (1) A revocation hearing shall be held within 120 days from the date the Board received official verification of the plea of guilty or nolo contendere or of the guilty verdict at the highest trial court level except as follows:
>>
>>> (i) If a parolee is confined outside the jurisdiction of the Department of Corrections, such as confinement out-of-State, confinement in a Federal correctional institution or confinement in a county correctional institution where the parolee has not waived the right to a revocation hearing, the revocation hearing shall be held within 120 days of the official verification of the return of the parolee to a State correctional facility.

37 Pa. Code § 71.4(1)(i) (internal citation omitted).

> § 71.5. General.

---

[1] Under Pennsylvania law, "backtime" is defined as "[t]he unserved part of a prison sentence which a convict would have been compelled to serve if the convict had not been paroled." 37 Pa. Code § 61.1.

> (a) If the parolee is in custody in another state, or in Federal custody, the Board may lodge its detainer but other matters may be deferred until the parolee has been returned to a State correctional facility in this Commonwealth.

37 Pa. Code § 71.5(a).

Thus, the law is clear that the 120-day period for holding a parole revocation hearing does not begin with the date of a parolee's conviction, but with the date he is returned to a Pennsylvania facility. Davis v. Board of Probation and Parole, 498 A.2d 6 (Pa. Cmwlth. 1985); *appeal denied*, 531 A.2d 1120 (Pa. 1987). This law is in accordance with the United States Supreme Court decision in Moody v. Daggett, 429 U.S. 78 (1976), which makes clear that the issuance of a parole violation detainer does not deprive an inmate of any constitutionally protected rights because the Board is not required to provide Petitioner with a hearing until he is taken into custody on the Board's warrant. As Respondent points out, just like the Petitioner in Moody, Petitioner's present confinement and consequent liberty loss are not the result of the Board's detainer, but are the result of his new federal conviction and sentence. Likewise, the Board's detainer is not a determination that he will be returned as a convicted parole violator because of the new federal conviction; rather, the detainer is the Board's notice to the institution of confinement that the Board will defer consideration of this matter until he is released from federal custody.

In addition to determining that there is no constitutional duty to hold a parole revocation hearing until a parolee is taken into custody by the execution of the warrant, the Supreme Court set forth the practical reasons for not requiring an immediate parole violation hearing.

> Finally, there is a practical aspect to consider, for in cases such as this, in which the parolee admits or has been convicted of an offense plainly constituting a parole violation, the only remaining inquiry is whether continued release is justified notwithstanding the violation. This is uniquely a "prediction as to the ability of the individual to live in society without committing antisocial acts." In making this prophecy, a parolee's institutional record can be perhaps

6

> one of the most significant factors. Forcing decision immediately after imprisonment would not only deprive the parole authority of this vital information, but since the other most salient factor would be the parolee's recent convictions, here a double homicide, a decision to revoke parole would often be foreordained. Given the predictive nature of the hearing, it is appropriate that such hearing be held at the time at which prediction is both most relevant and most accurate at the expiration of the parolee's intervening sentence.

Moody, 429 U.S. at 89 (internal citations omitted).

Finally, in order to establish a due process violation, a parolee must demonstrate that he suffered delay that was prejudicial. In this regard, Petitioner pleaded guilty to federal criminal charges. A criminal conviction conclusively establishes a probation/parole violation. Morrissey v. Brewer, 408 U.S., at 490 (parole revocation hearing). Because there is no indication that Petitioner's federal convictions have been invalidated, Petitioner has not demonstrated any prejudice resulting from the date of his hearing. It necessarily follows then that he has failed to demonstrate that he suffered any violation of his due process rights with respect to the timing of his parole revocation hearing. As the Petition does not allege a violation of the Constitution or laws or treaties of the United States, it must be dismissed. An appropriate order follows.

        /s/ Lisa Pupo Lenihan
        Lisa Pupo Lenihan
        United States Magistrate Judge

cc:    Edward J. Brown
       13063-067
       FCI Loretto
       P.O. Box 1000
       Loretto, PA 15940